UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED RENTALS, INC.,            :
                                 :
      Plaintiff,                 :
                                 :
      v.                         :        CASE NO.  3:05CV596(RNC)
                                 :
JEFFREY BASTANZI,                :
                                 :
      Defendant.                 :


RECOMMENDED RULING ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

The plaintiff, United Rentals Inc. ("United Rentals"), alleges that its former employee, Jeffrey S. Bastanzi, operates a competing business, B&S Industrial and Contractor Supplies, LLC, in breach of restrictive covenants contained in his Confidentiality and Non-Competition Agreement ("agreement").[1]  Pending before the court is the plaintiff's motion for a preliminary injunction to enjoin the defendant from competing with it and disclosing confidential information in violation of his agreement.[2]  (Doc. #3.)  The defendant argues that the motion should be denied because the

_____

[1]The complaint alleges:  (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) violation of Conn. Gen. Stat. §§ 52-570(b) and 53a-251; (3) violation of Conn. Gen. Stat. §§ 53-451 and 53-452; (4) breach of contract; (5) trade secret misappropriation in violation of Conn. Gen. Stat. § 35-51; (6) tortious interference with prospective economic advantage and existing business relationships; (7) breach of the duty of loyalty and (8) unjust enrichment.

[2]Chief Judge Robert N. Chatigny referred the plaintiff's motion for preliminary injunction to the undersigned for a recommended ruling pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. #8.)

agreement is not supported by consideration, was obtained under duress and/or was incomplete at the time he signed it. (Doc. #48, Def's Proposed Findings of Fact and Conclusions of Law ¶64.) The defendant further argues that he has not engaged in conduct in violation of the agreement. On August 10, 11 and 12, 2005, the court conducted an evidentiary hearing. The court, having considered the evidence, weighed the credibility of the witnesses and reviewed the legal memoranda submitted by the parties,[3] recommends that the plaintiff's motion for a preliminary injunction be granted. Following are the court's findings of fact and conclusions of law.

I.   <u>Findings of Fact</u>

     The plaintiff, United Rentals, is a Delaware corporation with its principal place of business in Connecticut. It rents and sells equipment and contractor supplies. Contractor supplies include safety equipment, hand tools, anchoring systems and other fasteners, hard hats and silk fencing. (Kennedy Test., Tr. 8/10/05 at 30.)

     From July 2003 until March 30, 2005, the defendant, a Florida resident, was employed by United Rentals as a salesperson in its Gainesville, Florida branch. He was not given a non-compete

---

     [3]In addition to the motion (doc. #3), the response in opposition (doc. #26), and the reply brief (doc. #28), the parties submitted post-hearing proposed findings of fact and conclusions of law. (Docs. #47, 48.)

agreement at the time he was hired.  (Bastanzi Test., Tr. 8/11/05 at 69.)  However, on his first day of work, he was asked and agreed to abide by United Rental's Business Ethics Policy and its Conflict of Interest Policy.  (Bastanzi Test., Tr. 8/11/05 at 66, Pl's Exs. 2-4.)  The Conflict of Interest policy states that "no employee shall own or have any interest, directly or indirectly, in any competing enterprise or activity, which conflicts or might conflict with United Rentals' interests, except with the written approval of the Chief Operating Officer."  (Pl's Ex. 4; Bastanzi Test., Tr. 8/11/05 at 68.)

United Rentals' Gainesville branch services an area extending 100 miles north and 75 miles in the other directions.  (Bastanzi Test., Tr. 8/10/05 at 131.)  While employed at United Rentals, Bastanzi sold and rented new and used equipment and sold contractor supply materials.  (Bastanzi Test., Tr. 8/11/05 at 2-3.)  Bastanzi was successful at selling contractor supplies.  (Kennedy Test., Tr. 8/10/05 at 48.)

Most of United Rentals' confidential information is maintained on its "WYNNE" computer system.  This information includes marketing plans and strategies, customer lists and contacts, special pricing arrangements and discount information and profit margins.  (Kennedy Test., Tr. 8/10/05 at 34-38.)  The computer system is password protected and access is limited to higher level employees.  Bastanzi had a password to access the WYNNE system and

the United Rentals' confidential information contained therein. (Bastanzi Test, Tr. 8/11/05 at 11.)   The information on the computer system is not generally known to the public. (Kennedy Test., Tr. 8/10/05 at 35.)   United Rentals also provided Bastanzi and other sales representatives with customer lists, customer analyses and the company profit margins, none of which is generally known and would be valuable to a competitor. (Kennedy Test., 8/10/05 at 36-37, 39.)

On May 10, 2004, ten months after Bastanzi began working at United Rentals, he signed the Confidentiality and Non-Competition Agreement at issue. (Pl's Ex. 1; Answer ¶21.) The agreement contains non-competition, non-solicitation and non-disclosure covenants. The agreement afforded him, under certain circumstances, severance pay to which he previously had not been entitled. (Agreement ¶3(a); Bastanzi Test., Tr. 8/11/05 at 59-60.) Bastanzi's manager at the time, Randall Graham, told Bastanzi that he would be fired if he did not sign the agreement. (Bastanzi Test., Tr. 8/11/05 at 48-49.) Bastanzi did not tell Graham that he had plans to operate his own business. (Bastanzi Test., Tr. 8/11/05 at 70.) Bastanzi signed the agreement and continued working at United Rentals until March 2005. (Bastanzi Test., Tr. 8/11/05 at 49-50.)

The non-competition provision of the agreement restricts

Bastanzi during his employment and for 12 months thereafter[4] from working for any competing entity within 75 miles of the United Rentals' Gainesville branch.  The agreement also prohibits Bastanzi from soliciting customers and suppliers of United Rentals' Gainesville branch.  The agreement provides in relevant part:

> 2.  <u>Non-Competition</u>.
> (a) During his or her employment by the Company and for a period of 12 months immediately following the termination of his or her employment . . .  Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):
>
> (i) in a 75 mile radius of the Company location in which Employee was employed, be employed or retained by any person who or which then competes with the Company nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial or other services, or any advice, assistance or other accommodation;
>
> (ii) solicit or accept business or call upon any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company at any time during the period of his or her employment . . . .
>
> (iv) own any interest in or be employed by or provide any services to any person or entity which engages in any conduct which is prohibited to Employee under section 2(a).
>
> (b) Employee shall be deemed to be employed or retained in the Restricted Area if Employee has an office in the Restricted Area or if Employee performs any duties or renders any advice with respect to any facility or business activities in the Restricted area.

---

[4]The time period is computed by, <u>inter alia</u>, excluding any time in which the employee is in violation of the agreement.  <u>See</u> Agreement ¶2(d).

The agreement has a confidentiality clause that prohibits disclosure of certain confidential information.[5] (Pl's Ex. 1, Agreement ¶1.)

The agreement has a remedy provision in which the parties agree that "monetary damages will be inadequate and the Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced" and that as a result, "the Company shall be entitled . . . to an injunction restraining any violation of the Agreement . . . ." (Pl's Ex. 1, Agreement ¶2(f).)

In October 2004, after Bastanzi signed the agreement and while he was employed by United Rentals, Bastanzi and his wife formed B&S Industrial and Contractor Supplies, LLC ("B&S"). (Bastanzi Test., Tr. 8/11/05 at 39.)  The address of B&S was the defendant's home address. (Doc. #25, Stipulation of Fact 6.)  B&S is engaged in the

---

[5]The information includes:

| | |
|---|---|
| (i) | business, pricing and management methods; |
| (ii) | finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions; |
| (iii) | names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company; |
| (iv) | technical information, work products, and know-how; |
| (v) | cost, operating and other management information systems, and other software and programming . . . . |

(Pl's Ex., Agreement ¶1(f).)

6

business of selling fasteners and other contractor supplies. (Bastanzi Test., Tr. 8/11/05 at 39.)  B&S and United Rentals both operate in the contractor supply industry and sell some of the same products.  (Pl's Exs. 7-12, 17-21; Kennedy Test., Tr. 8/10/05 at 63-67; Bastanzi Test., Tr. 8/11/05 at 130-132, 137, 171-172.) While Bastanzi was employed by United Rentals, he engaged in activities to get B&S up and running. (Bastanzi Test., Tr. 8/11/05 at 101.)  On at least one occasion, Bastanzi, on behalf of B&S, contacted one of United Rentals' vendors about B&S becoming a distributor of its products. (Bastanzi Test., Tr. 8/11/05 at 99-100.)  In November 2004, B&S began selling contractor supplies. (Bastanzi Test., Tr. 8/11/04 at 167.)  Bastanzi told his customers at United Rentals about B&S and sold them products on behalf of B&S.  (Bastanzi Test., Tr. 8/11/05 at 105-106, 111-12, 119, 169.)

Beginning in December 2004, United Rentals' revenues from its sales of contractor supplies fell off significantly.  United Rentals' had sales of $19,209 in contractor supplies in November 2004 but only $1953 in sales in December 2004.  (Pl's Ex. 5; Kennedy Test., Tr. 8/10/05 at 49-53.)  At the same time, B&S's revenues climbed.  (Pl's Ex. 13, 16.)  B&S's revenue for the month of December 2004 was $24,000.  (Bastanzi Test., Tr. 8/11/05 at 45.)

United Rentals, through an anonymous tip on its employee hotline, was alerted that Bastanzi was operating a business selling contractor supplies on the side.  (Kennedy Test., Tr. 8/11/05 at

7

55.)  On March 30, 2005, Shannon Rogers ("Rogers"), the manager of corporate security for United Rentals, conducted an investigation. (Rogers Test., 8/10/05 at 109, 111.)  Rogers observed Bastanzi pick up a package at UPS and drop it off at Ridgeway Roofing.  (Rogers, Tr. 8/10/05 at 112-113.)  United Rentals did not have any scheduled deliveries to Ridgeway Roofing that day.  (Kennedy Test., Tr. 8/10/05 at 57.)  As a result of Rogers' investigation, William Kennedy ("Kennedy"), the Gainesville branch manager, summoned Bastanzi to a meeting.  When questioned about his activities that morning, Bastanzi initially denied making any deliveries.  Upon being presented with photographs Rogers had taken, Bastanzi acknowledged that he was delivering fasteners for B&S.  (Kennedy Test., Tr. 8/10/05 at 58; Rogers Test., Tr. 8/10/05 at 116.) United Rentals terminated Bastanzi. (Kennedy Test., Tr. 8/10/05 at 59.)  Since that time, Bastanzi has been working for B&S.  B&S's monthly sales have been approximately $30,000.  (Bastanzi Test., Tr. 8/11/05 at 54.)

II.  <u>Conclusions of Law</u>

The court has subject matter jurisdiction on the basis of federal question and diversity jurisdiction and has personal jurisdiction over the defendant.  (Pl's Ex. 1, Agreement ¶4(a).)

To obtain a preliminary injunction, the plaintiff must show (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the

merits or (b) the existence of sufficiently serious questions on the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.  See Fed. Express Corp. v. Fed. Espresso Inc., 201 F.3d 168, 173 (2d Cir. 2000).

    A.   Likelihood of Success on the Merits[6]

    The plaintiff moves for a preliminary injunction as to its breach of contract claim.[7]  The plaintiff's breach of contract claim alleges that the defendant violated, inter alia, the non-compete obligations contained in the agreement.  The elements of a breach of contract claim are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach.  Chem-Tek, Inc. v. Gen. Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993) (citing O'Hara v. State, 218 Conn. 628 (1991)).  Connecticut law governs the agreement.  (Pl's Ex. 1, Agreement ¶5(e).)

    The defendant first argues that the agreement is unenforceable because it lacks consideration.  The defendant had been employed by United Rentals for some months before being asked to sign the

---

[6]A movant "need not show that success is an absolute certainty.  He need only make a showing that the probability of his prevailing is better than fifty percent.  There may remain considerable room for doubt."  Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985), overruled on unrelated grounds, O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).

[7]Because the court concludes that the plaintiff is entitled to injunctive relief as to its breach of contract claim, it need not address the plaintiff's other claims as grounds for injunctive relief.

agreement and argues that the plaintiff did not give him anything in exchange for it.  According to the defendant, the plaintiff did not "alter the terms or conditions of his employment.  That is, Bastanzi remained an at-will employee." (Doc. #48, Def's Proposed Findings of Fact and Conclusion of Law ¶16.)

The evidence shows that Bastanzi's employment would have been terminated if he did not sign the agreement. (Bastanzi Test., Tr. 8/10/05 at 161.)  Bastanzi signed the agreement and United Rentals continued his employment.  (Bastanzi Test., Tr. 8/11/05 at 49.) "The underlying purpose of the defendant in entering into the agreement was to continue thereafter in the employment of the plaintiff at a mutually agreeable salary; the benefit offered him was such a continuance, in return for which the plaintiff was to receive his services and the benefit of the restrictive covenant in the agreement." Roessler v. Burwell, 119 Conn. 289, 293 (1934). "Connecticut recognizes that continued employment is adequate consideration to support non-compete covenants with at-will employees." Sartor v. Town of Manchester, 312 F. Supp. 2d 238, 245 (D. Conn. 2004)(Droney, J.).  See, e.g., R & C Livolsi, Inc. v. Campanelli, No. CV 970259105S, 1997 WL 639421, at *4 (Conn. Super. Ct. Oct. 8, 1997)(citing Roessler); Russo Assocs., Inc. v. Cachina, No. 27 69 10, 1995 WL 94589, at *3 (Conn. Super. Ct. Mar. 1, 1995)("The law presumes that such a covenant is supported by the employer's implied promise to continue the employee's employment;

10

or his forbearance in not discharging the employee then & there.");

Daniel V. Keane Agency, Inc. v. Butterworth, No. 31 31 81, 1995 WL
93387, at *7 (Conn. Super. Ct. Feb. 22, 1995)("where, as here, the
preexisting contract of employment is terminable at will, no overt
consideration is required to support an otherwise valid covenant
not to compete.  The law presumes that such a covenant is supported
by the employer's implied promise to continue the employee's
employment."); Weseley Software Dev. Corp. v. Burdette, 977 F.
Supp. 137, 144 (D. Conn. 1977)(Fitzsimmons, M.J.)(citing Russo and
Keane).  But see, e.g., Cost Management Incentives, Inc. v. London-
Osborne, No. CV020463081, 2002 WL 31886860, at *7 (Conn. Super. Ct.
Dec. 5, 2002) (citing cases); Fairfaxx Corp. v. Nickelson, 28 Conn.
L. Rptr. 162, 2000 WL 1409714, at *6 (Conn. Super. Ct. Sept. 14,
2000).

    Notwithstanding, the agreement is supported by consideration.
The plain terms of the agreement provided the defendant, under
certain circumstances, with a new benefit of salary continuation
upon termination to which he was not previously entitled.   See
Agreement 3(a).[8]    This severance compensation constitutes

---

[8]Paragraph 3 provides in relevant part:

3.   Salary Continuation
(a) In the event Employee's employment was terminated by
the Company without "cause," the provisions of Section
2(a)(i) and 2(a)(ii) above, shall, in all events, expire
on the date on which both (A) and (B) shall be true;
namely, (A) Employee has not theretofore breached any of
his or obligations hereunder, and (B) the Company, at its

11

consideration.

The defendant next argues that the contract is unenforceable because he signed it under duress.  (Doc. #48, Def's Proposed Findings of Fact and Conclusions of Law ¶64.)  In support of this claim, the defendant states that he was "coerced to sign the agreement under threat of termination," that his manager used vulgar language in informing him that the agreement was required and that he was not permitted to consult an attorney before signing it.  (Doc. #26, Def's Response to Pl's Mtn at 1, 8.)  He testified that he signed it because he had nowhere else to go.  (Bastanzi

---------------------------------

option, has elected, by not less than 10 days notice to Employee, not to, or no longer to, voluntarily pay to Employee, every 2 weeks, 1/26th of (i) 80% of the total compensation paid to Employee by the Company during the 12 month period immediately preceding termination of his or her employment, or (ii) for an Employee who was employed by the Company for a period less than 12 months, 890% of the annualized total compensation paid to Employee by the Company for the period of employment preceding the Employee's termination; provided, however, all payments to Employee provided in this Section 3(a) shall be conditioned upon Employee's execution of a separation agreement and general release, in such form as the Company, in its sole discretion determines.  In the event, (x) the Company elects to provide to Employee the payments set forth in this Section 3(a) and (y) Employee fails to execute the aforementioned separation agreement and general release, the provisions of Section 2(a)(1) and 2(a)(ii) shall remain in effect for the full term specified in this Agreement, notwithstanding the fact that the Company shall not be obligated to provide to Employee the payment set forth in this Section 3(a). . . .

The plaintiff discussed this provision of the agreement in papers it submitted prior to the hearing (doc. #28) as well as during cross-examination of the defendant.  (Bastanzi Test., Tr. 8/11/05 at 58).  The defendant did not address it at all.

Test., Tr. 8/10/05 at 157.)

The defendant bears the burden of proving duress. Capuano v. Brown, No. CV970339085, 1998 WL 437350, at *3 (Conn. Super. Ct. July 22, 1998).   The defense of duress "does not exist where consent to an agreement is secured because of mere hard bargaining or the pressure of financial circumstances.  Rather, the conduct of the party obtaining the advantage must be manifestly tainted with some degree of fraud or wrongdoing in order to invalidate an agreement on the basis of duress." Id.  To demonstrate duress, the defendant

> must prove [1] a wrongful act or threat [2] that left the
> victim no reasonable alternative, and [3] to which the
> victim in fact acceded, and that [4] the resulting
> transaction was unfair to the victim. . . . The wrongful
> conduct . . . must induce a fearful state of mind in the
> other party, which makes it impossible for [the party] to
> exercise his own free will . . . .

Ace Equipment Sales, Inc. v. H.O. Penn Machinery Co., Inc., 88 Conn. App. 687, 696 (2005).

The defendant has not met his burden of demonstrating duress. Although he might have felt pressured to sign the agreement, analysis of a claim of duress "focuses not simply on the question of whether the victim felt coerced to undertake a particular action, but on whether the act or threat underlying the coercion was wrongful." Peck v. Peck,  FA040412441, 2005 WL 1756687, at *1 (Conn. Super. Ct. June 9, 2005).   There is no evidence of a wrongful act or threat.  Also absent from the record is any showing

of "such compulsion affecting the mind as shows that the execution of the contract or other instrument was not the voluntary act of the maker." Capuano, 1998 WL 437350, at *3. Finally, the court does not credit the defendant's testimony that he had no alternative. To the contrary, the defendant clearly had a reasonable alternative to signing the agreement -- running his own business, an option he pursued on a full-time basis when he was terminated in March 2005. (Bastanzi Test., Tr. 8/11/05 at 50-51, 54.)

The defendant next argues that the agreement is unenforceable because it was incomplete at the time he signed it. Specifically, the defendant contends that the space indicating the geographic scope of the non-compete area was blank at the time he signed the agreement and that "75 miles" was later filled in. (Bastanzi Test., Tr. 8/10/05 at 157, 163.) According to Bastanzi, he noticed the blank but signed anyway. (Bastanzi Test., Tr. 8/10/05 at 157.) There is no evidence that he notified anyone that the contract was blank. The court does not find credible the defendant's testimony that the geographic area was blank and therefore rejects this argument.

Finally, the defendant appears to suggest that the agreement is unenforceable because of certain oral representations made before he was hired. Specifically, Bastanzi testified that during his interview he told Mike Berini, the branch manager, that he

planned to start his own business.  According to Bastanzi, Berini
responded that there was no problem[9] and that Bastanzi did not have
to sign a non-compete agreement.  (Bastanzi Test. Tr. 8/10/05 at
124, 8/11/05 at 61, 72, 166.)  Even assuming that the court found
Bastanzi's testimony credible, which it does not, he has not
offered any legal argument as to why his conversation with Berini
would render the non-compete unenforceable.[10]  Although Bastani was
not required to sign a non-compete at the inception of his
employment with United Rentals, the plaintiff was not precluded
from subsequently asking the defendant to do so.  The defendant's
attempt to contradict the terms of the written agreement by
pointing to alleged prior oral communications fails.  The parol
evidence rule prohibits the use of "evidence outside the four
corners of the contract concerning matters governed by an
integrated contract that vary or contradict the terms of the
contract."  Hood v. Aerotek, Inc., No. 3:98cv1524, 2002 WL 294762,
at *3 (D. Conn. Feb. 19, 2002)(Droney, J.).   "Parol evidence

---

[9]According to Bastanzi, Berini told him to keep this
information secret.  (Bastanzi Test., Tr. 8/11/05 at 63.)

[10]Bastanzi testified that "my agreement with United Rentals was
I did not have a non-compete."  (Bastanzi Test., Tr. 8/10/05 at
157.)  Bastanzi further testified that "if Berini told me that I
did not need a non-compete to start working there, he agreed to
that, then I should not have to sign one while I worked there, any
time."  (Bastanzi Test., Tr. 8/11/05 at 72.)   Although the
defendant placed great emphasis on this testimony during the
hearing, the defendant's post-hearing submission is silent as to
the legal significance of Berini's purported statements.

offered solely to vary or contradict the written terms of an integrated contract is . . . legally irrelevant." Id. (citing TIE Communications, Inc. v. Kopp, 589 A.2d 329, 333 (Conn. 1991)). A written agreement is integrated (whether or not it contains an integration clause) if the subject matter is mentioned, covered with or dealt with in the writing. Id. Here, where the subject matter of the alleged oral communications – the non-compete - is included in the written agreement and there is no evidence to contradict a finding that the parties intended the writing to be the final expression of the parties, the written agreement is "presumed to have been the final agreement." Id. at *4. As such, Berini's alleged representations are legally irrelevant and do not render the non-compete unenforceable.

<u>Reasonableness of the Non-Compete</u>

Under Connecticut law, a covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable. New Haven Tobacco Co. v. Perrelli, 18 Conn. App. 531, 533 (1989). In determining whether a covenant is reasonable, the court considers: "(1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests."

16

<u>Robert S. Weiss & Associates, Inc. v. Wiederlight</u>, 208 Conn. 525, 529 n.2 (1988).   This test is "disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable."   <u>New Haven Tobacco Co.</u>, 18 Conn. App. at 534.

As to the first factor, the length of time the restriction is in effect, ¶2(a) of the agreement contains a time limitation of 12 months.   The defendant does not dispute that the temporal restriction of one year is reasonable.   The court finds that a one year prohibition is reasonable.   See <u>Robert S. Weiss & Assoc. Inc. v. Wiederlight</u>, 208 Conn. 525, 531-32 (1988) (and cases cited therein).

The geographic scope also is reasonable.   The restricted area -- a 75 mile radius of the Gainesville, Florida branch -- accurately captures the market serviced by the plaintiff and thus is precisely drawn to protect its goodwill.   An employer can protect its business in the area where it does business.   See <u>Robert S. Weiss & Associates</u>, 208 Conn. at 533.   See also <u>Musto v. Opticare Eye Health Centers, Inc.</u>, No. CV9900155663S, 2000 WL 1337676, at *4 (Conn. Super. Ct. Aug. 9, 2000) (upholding geographic scope where record demonstrated that plaintiff does business in geographic area defined by restrictive covenant).

The restrictive covenant provides a fair degree of protection to the employer.   Given the nature of the plaintiff's customer-

17

driven business, it is reasonable for it to be concerned that an employee with extensive relationships with its customers, such as the plaintiff, might be in a position to threaten its business if the employee works for a competitor.  See Elizabeth Grady Face First, Inc. v. Escavich, 321 F. Supp. 2d 420, 427 (D. Conn. 2004)(Underhill, J.).

As to the fourth factor, the defendant contends that the covenant is an unreasonable restraint on his opportunity to pursue his occupation.  Bastanzi argues that "the B&S business is the sole support of himself and of his family.  The inability to continue doing business for B&S in the restricted area would work a real hardship on [him] and his family."  (Doc. #48, Def's Proposed Findings of Fact and Conclusions of Law ¶72.)  By its very nature, the restrictive covenant affects the defendant's opportunity to pursue his occupation.  However, it does not do so unreasonably. See Scott v. General Iron & Welding Co., 171 Conn. 132 (1976) (court enforced 5-year, statewide prohibition on competition against former manager of wielding and metal fabrication company). The covenant does not deprive the defendant of the ability to earn a living.  The defendant is permitted to work anywhere except in competition with the plaintiff within the restricted geographical area for a limited time period.

As a final matter, enforcement of the covenant will not harm the public interest.

Having concluded that a valid non-compete agreement exists, the court next determines whether the plaintiff likely will succeed in establishing that the defendant breached the agreement.  Breach of contract is an "unjustified failure to perform all or any part of what is promised in a contract."  Martin v. Dupont Flooring Systems, Inc., No. 3:01CV2189(SRU), 2004 WL 726903, at *3 (D. Conn. Mar. 31, 2004).

The defendant argues that he is not in breach of contract because he does not compete with the plaintiff.  (Bastanzi Test, Tr. 8/11/05 at 70.)  The evidence, however, is to the contrary.  It is undisputed that B&S and United Rentals both operate in the contractor supply industry.  It is further undisputed that B&S sells some of the same items as United Rentals to the same customers.  (Bastanzi Test., Tr. 8/11/05 at 72, 111-112, 169; Pl's Exs. 7-12, 17-10, Kennedy Test. Tr. 8/10/05 at 62-67.)  Bastanzi, through his company B&S, competed with United Rentals while he was employed by the plaintiff and continues to do so.  (Pl's Ex. 1, Agreement ¶2(i).)  The plaintiff likely will succeed on its claim that the defendant's conduct violates the agreement.

B.   Irreparable Harm

"In cases such as this, involving a person competing with his former employer, particularly when such activity is prohibited by a restrictive covenant or is facilitated by the misappropriation of trade secrets or customer information, courts have often taken a

19

somewhat relaxed approach to the irreparable harm inquiry, and in certain circumstances have found it appropriate to presume the existence of such an injury." Innoviant Pharmacy, Inc. v. Morganstern, 390 F. Supp.2d 179, 188 (N.D.N.Y. 2005). A number of Connecticut courts and courts in this district have held that irreparable harm may be assumed in cases where the plaintiff alleges a breach of a restrictive covenant. Pop Radio, LP v. News America Marketing In-Store, Inc., No. X08CV054002814, 2005 WL 3112887, at *5 (Conn. Super. Ct. Sept. 15, 2005). See e.g., Sagarino v. SCI Connecticut Funeral Services, Inc., No. CV 000499737, 2000 WL 765260, at *2 (Conn. Super. Ct. May 22, 2000)("Irreparable injury and lack of an adequate remedy at law is considered to be automatically established where a party seeks to enforce a covenant not to compete."); Musto v. Opticare Eye Health Centers, Inc., No. 155663, 2000 WL 1337676, at *3 (Conn. Super. Ct. Aug. 9, 2000)(same); Century 21 Access America v. Lisboa, 35 Conn. L. Rptr. 272, 273 (Conn. Super. Ct. 2003) (finding that Connecticut courts typically find per se irreparable harm when a non-compete clause has been breached).[11]

In this case the defendant is soliciting and marketing to United Rental's customers. See Elizabeth Grady Face First, Inc. v.

---

[11]Although the court acknowledges this authority, based upon the evidence and testimony introduced at the hearing, the court also makes an explicit finding of irreparable harm to the plaintiff.

<u>Escavich</u>, 321 F. Supp. 2d 420, 423 (D. Conn. 2004)(finding former employee's competition with plaintiff and solicitation of its customers likely would diminish plaintiff's existing customer base and decrease its goodwill and that "such damages cannot be repaired with money.")  Bastanzi acknowledged in the agreement that in the event he breached the agreement, the plaintiff's remedies at law would be "inadequate" and United Rentals would be entitled to an injunction.  This acknowledgment, if not an admission, is at least evidence and a recognition of the reality that money damages are not sufficient to remedy the loss.  See <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63, 68 (2d Cir. 1999)(finding that such a provision "might arguably be viewed as an admission by [the defendant] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision.")  Given that the two companies compete, the consequent loss of existing customers and the acknowledgment by the defendant that remedies at law would be inadequate, the plaintiff has established sufficient evidence of irreparable harm to justify the issuance of an injunction.

Having found that the plaintiff has demonstrated a likelihood of success on the merits and irreparable harm, the undersigned concludes that the plaintiff should be granted a preliminary injunction enjoining the defendant from violating the restrictive covenants in the agreement.  The injunction shall be in effect for one year from the date of this ruling.  <u>See</u> Agreement ¶2(d)

(excluding time in which the defendant is in violation of the agreement from the 12 month period). Additionally, under the circumstances of this case, the undersigned finds that no bond is necessary and recommends that security be waived pursuant to Fed. R. Civ. P. 65(c).

III. <u>Conclusion</u>

For these reasons, the court recommends that: the plaintiff's motion for a preliminary injunction (doc. #3) be granted; the defendant be enjoined from violating the restrictive covenants of the agreement for the period of one year from the date of this recommended ruling; and that security be waived.

Any party may seek the district court's review of this recommendation. <u>See</u> 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) and 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

Dated this 22nd day of December, 2005 at Hartford, Connecticut.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge